1

JONATHAN E. NUECHTERLEIN
General Counsel

2

DANIELLE ESTRADA (DC Bar No. 494517)
KATHLEEN DAFFAN (DC Bar No. 991729)

3

Federal Trade Commission
600 Pennsylvania Avenue NW
Mailstop: CC-8528

4

Washington, DC 20580
Tel. (202) 326-2630 (Estrada)

5

Tel. (202) 326-2727 (Daffan)
Fax (202) 326-3395

6

destrada@ftc.gov
kdaffan@ftc.gov

7

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

8

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

10

11

FEDERAL TRADE COMMISSION,

Plaintiff,

12

13

v.

14

WORDSMART CORPORATION, a
California corporation, also doing business
as WS LEARNING CENTER, and

15

16

DAVID A. KAY, individually and as the
President and CEO of WordSmart
Corporation,

17

Defendants.

18

Case No.

**'14CV2348 AJB  RBB**

**COMPLAINT FOR
PERMANENT INJUNCTION
AND OTHER EQUITABLE
RELIEF**

19

20

21

1

1   Plaintiff, the Federal Trade Commission ("FTC" or "the Commission"), for its

2   Complaint alleges:

3        1.    The FTC brings this action under Sections 13(b) and 19 of the Federal

4   Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the

5   Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing

6   Act"), 15 U.S.C. §§ 6101-6108, as amended, to obtain temporary, preliminary, and

7   permanent injunctive relief, rescission or reformation of contracts, restitution, the

8   refund of monies paid, disgorgement of ill-gotten monies, and other relief for

9   Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the

10   FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, as amended.

11   **SUMMARY OF THE CASE**

12        2.    Defendants have targeted parents of school-age children, and have

13   used deceptive practices to take millions of dollars from such families at least as

14   far back as January 2010. In marketing the "WordSmart" educational goods and

15   services to consumers throughout the United States, Defendants have used illegal

16   methods and made false or unsubstantiated claims in media such as a television

17   infomercial.

18        3.    Defendants have often called consumers with school-age children,

19   referred to their children by name, and misrepresented that the child in question

20   had expressed interest in a WordSmart good or service. In some instances,

21   Defendants have claimed an affiliation with the child's school or the administrators

2

1   of a standardized test such as the SAT. Defendants have also repeatedly called

2   consumers whose numbers are registered on the "do-not-call" registry (the

3   "National Do Not Call Registry" or "Registry"). In addition, they have refused to

4   honor consumers' requests to stop calling and have "abandoned" numerous calls,

5   i.e., failing to connect a consumer to a sales representative within two seconds of

6   the consumer's greeting.

7       4.      During Defendants' telemarketing and other advertising they have

8   also made false or unsubstantiated claims about WordSmart goods and services.

9   For example, Defendants have falsely claimed that consumers who use them will

10  learn 10 to 100 times faster, that WordSmart goods and services will improve letter

11  grades by at least one GPA point, and that WordSmart offers a risk-free 30-day

12  trial period.

13      5.      Defendants' deceptive sales pitches violate the FTC Act, and their

14  aggressive telemarketing campaigns violate the TSR's restrictions against

15  harassing consumers and calling individuals who have listed their phone numbers

16  on the National Do Not Call Registry.

17                          **JURISDICTION AND VENUE**

18      6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C.

19  §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and

20  6105(b).

21

3

7.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2), 1391(c)(1) and (c)(2), and 15 U.S.C. § 53(b).

**PLAINTIFF**

8.     The FTC is an independent agency of the United States government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

9.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, refund of monies paid, disgorgement of ill-gotten monies, and other relief. 15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 57b, 6102(c), and 6105(b).

**DEFENDANTS**

10.     Defendant WordSmart Corporation, also doing business as WS Learning Center ("WordSmart"), is a California corporation with its principal place of business at 10025 Mesa Rim Road, San Diego, California 92121. WordSmart transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with

others, WordSmart manufactured, advertised, marketed, promoted, offered for sale, sold, and distributed educational goods and services to consumers throughout the United States.

11.   Defendant David A. Kay formed WordSmart in 1993, oversaw the creation of its goods and services, and has served as majority shareholder and CEO of the Company through the present day. Kay oversees all operations for WordSmart, including the creation, development, and approval of its advertising and promotional materials and the development and evaluation of substantiation for representations contained therein. At all times material to this Complaint, acting alone or in concert with others, Kay formulated, directed, controlled, had the authority to control, or participated in the acts and practices of WordSmart, including the acts and practices set forth in this Complaint. Kay resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMERCE

12.   At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## THE TELEMARKETING SALES RULE

13.   Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15

U.S.C. §§ 6101-6108. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

14.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of the goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii). It also prohibits sellers and telemarketers from making a false or misleading statement to induce any person to pay for goods or services. 16 C.F.R. § 310.3(a)(4).

15.     The TSR, as amended in 2003, established a National Do Not Call Registry maintained by the FTC, which lists consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

16.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

17.     The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at www.telemarketing.donotcall.gov, to pay any required fee(s), and to download the numbers not to call.

18.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(v).

19.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to telephone numbers on the Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

20.     The TSR prohibits sellers and telemarketers from engaging in or causing others to engage in initiating an outbound telephone call to a consumer who has previously stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered. 16 C.F.R. § 310.4(b)(1)(iii)(A).

21.     The TSR prohibits sellers and telemarketers from abandoning, or causing others to abandon, any outbound telephone call. A telephone call is considered "abandoned" if a person answers it and the person who initiated the call does not connect the call to a sales representative within 2 seconds of the completed greeting of the person answering the call. 16 C.F.R. § 310.4(b)(1)(iv).

22.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**DEFENDANTS' BUSINESS PRACTICES**

23.     Defendants WordSmart and David Kay (collectively, "Defendants") have manufactured, advertised, marketed, promoted, offered for sale, sold, and distributed educational goods and services to consumers throughout the United States at least as far back as January 2010. These goods and services have included an SAT/ACT preparation product as well as "Excellence Packs," which Defendants advertised using a 30-minute infomercial featuring Alex Trebek.

24.     The retail price for Defendants' goods and services has ranged from approximately $15 to $300. From January 2010 to present, total sales revenue for Defendants' goods and services has exceeded $18 million.

25.     Defendants have primarily targeted their advertising to parents who would like to improve the academic performance of their school-age children or help them prepare for a standardized test such as the SAT or ACT.

26.     Defendants have advertised their goods and services through a wide variety of media, including outbound telemarketing calls, television infomercials, direct mail campaigns, and the Internet.

**Defendants' Deceptive and Abusive Telemarketing Campaign**

27.     From at least January 2010 through the present day, Defendants have engaged in a plan, program, or campaign to manufacture, advertise, market, promote, offer for sale, sell, or distribute educational goods and services through interstate telephone calls to consumers throughout the United States.

28.     Defendants have often contacted consumers initially through unsolicited telemarketing calls made by WordSmart employees or intermediaries working on behalf of Defendants. During these sales calls, the telemarketers have usually used the name of a school-age child living in the home. They have frequently stated that the child expressed an interest in WordSmart goods or services. In addition, they have often given parents the impression that they were affiliated with the child's school or with the administrators of a standardized test such as the ACT or the SAT. In fact, none of these things were true.

29.     During telemarketing calls, Defendants have guaranteed consumers' results from using the WordSmart program for only 20 minutes a day, twice a week, for a total of 20 hours. Specifically, Defendants have guaranteed that these 20 hours will improve the following: letter grades by at least 1 GPA point; SAT scores by at least 200 points; ACT scores by at least 4 points; GRE and GMAT scores by at least 100 points; and IQ scores. These claims are false or were not substantiated at the time the representations were made.

30.     During telemarketing calls, Defendants have often told consumers that WordSmart uses five modes of learning, which can teach people to learn a word after viewing it only 1-5 times, instead of having to view that same word up to 50 times without WordSmart. This claim is false or was not substantiated at the time the representation was made.

31.     During telemarketing calls, Defendants have told consumers that WordSmart offers a risk-free 30-day trial period during which they could return the goods or services for any reason and receive a full refund. Yet, as described below, Defendants have often failed to honor their promise to provide a full refund for any reason.

32.     Defendants have been "seller[s]" and/or "telemarketer[s]" engaged in "telemarketing," and Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone call[s]" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(v), (aa), (cc), and (dd).

33.     Defendants have engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate telephone call.

34.     To induce the purchase of WordSmart goods or services, Defendants have initiated, or caused others to initiate, outbound telephone calls to telephone numbers on the National Do Not Call Registry.

35.     To induce the purchase of WordSmart goods or services, Defendants have initiated, or caused others to initiate, outbound telephone calls to consumers who previously stated that they did not wish to receive further calls by or on behalf of the Defendants.

36.     Defendants have abandoned outbound telephone calls by failing to connect the call to a sales representative within two seconds after the consumer's completed greeting.

### Defendants' Failure to Substantiate Their Advertisements

37.     To induce consumers to purchase WordSmart goods and services, Defendants disseminated or caused to be disseminated advertisements, including, but not limited to, the attached Exhibits A through C.

38.     The advertisements contain, among other things, the following statements:

A. Television: 30-Minute Advertisement (Exhibit A – DVD and Transcript of DVD)

- "Learn 10 to 100 times faster with Wordsmart." *See* Ex. A at 9, 18, 26.

- "WordSmart's five modes of learning teach people to learn a word after viewing it just one to five times, instead of having to view that same word 20 to 50 times." *See* Ex. A at 9, 18.

- WordSmart's "award-winning speed-reading program is designed to improve reading speed up to ten times, while improving comprehension." *See* Ex. A at 11, 20, 27.

- "Wordsmart guarantees your child can increase letter grades and standardized test scores and improve their chances of

acquiring the college degree of their choice." *See* Ex. A at 9-10, 18.

- "[G]uaranteed to improve letter grades, SAT, ACT, GRE, GMAT and IQ scores . . . ." *See* Ex. A at 6.

- "[G]uaranteed way to increase SAT scores an unprecedented 200 points." *See* Ex. A at 25-26.

- "And adults can enjoy … greater income potential." *See* Ex. A at 10, 18-19.

- "Call now to try the complete WordSmart system through this exclusive television offer risk-free for 30 days for just $14.95.… That's right, just $14.95 to try the complete WordSmart system risk-free. After using Wordsmart for 30 days, if you or your child doesn't begin reading, writing and speaking better, simply send it back and we'll refund your $14.95." *See* Ex. A at 10, 19, 26-27.

- "Wordsmart can help any student read, write and speak better in just 30 days. Guaranteed." *See* Ex. A at 10, 19, 26.

B. Website: www.wordsmart.com (Exhibit B)

- "Score higher in every class and on every test." *See* Ex. B at 30-36, 38.

- "Get into the college of your choice." *See* Ex. B at 37.

1

2

3

4

- "At WordSmart, we have developed a comprehensive Vocabulary and Reading program that insures [sic] your Vocabulary will increase to the level of top University entrants." *See* Ex. B at 39.

5

6

7

8

9

- "After just 20 hours with the WordSmart program, you will have internalized so much knowledge of the English language that you will be able to identify the meaning of ANY word you come across on your college prep tests and beyond!" *See* Ex. B at 38.

10

11

12

13

14

15

16

- WordSmart will improve: letter grades by at least 1 GPA point; SAT scores by at least 200 points; ACT scores by at least 4 points; GRE and GMAT scores by at least 100 points; and IQ scores. Consumers can achieve these benefits with only 20 minutes of study per day, twice a week, for a total of 20 hours. *See* Ex. B at 33-34 (letter grade claim); 30-36 (SAT claim); 32 (ACT claim); 33 (GRE, GMAT claims); 35 (IQ score claim).

17

18

19

20

- "100% Money Back 30-Day Guarantee: …[G]o ahead and try WordSmart for 30 days. If for any reason you are unsatisfied with the product, simply return it for a full refund of the purchase price. It's that easy." *See* Ex. B at 30.

21

C.  Sample Direct Mail flyer addressed to "Jennifer Johnson" (Exhibit C)

- "Jennifer, find out how you can improve Chloe's SAT score 200 points or more – Guaranteed." *See* Ex. C at 40.

**Defendants' Written Claims**

39.     A few days after charging the consumer's credit card, Defendants have typically sent the consumer a package of software, along with materials relating to their goods and services.

40.     In the written packages, Defendants have made many of the same claims and guarantees about their goods and services that they have made to consumers through telemarketing and other advertising.

A. SAT/ACT preparation product:

- "It's fast – 10 to 100 times faster than unstructured study."
- "WordSmart will increase SAT, ACT, GRE, & IQ test scores."
- "Studies have shown that, on average, 20 hours of study with WordSmart will improve students' SAT combined scores by at least 200 points or their ACT by 4 or more points."

B.  "Progressive Reader" product:

- "Reading speed and comprehension will increase after only several hours of use."

C.   "Satisfaction Guarantee" page included with WordSmart products:

- "If for any reason you are not satisfied with our products or

services in the first 30 days, we will exchange your software or

give you a full refund for the product amount. It's your choice!"

D. Letter signed by David A. Kay as President of WordSmart included

with products:

- "The WordSmart system has consistently been recognized as

the most effective way to improve test taking ability, grades,

and income potential."

41.     Consumers who visited the landing page of the WordSmart website, saw the infomercial with Alex Trebek, or received a call from a WordSmart telemarketer were presented with many of the above claims. Thousands of consumers reasonably relied on these claims and spent millions of dollars each year on Defendants' goods or services in an attempt to improve their children's future prospects. Yet, Defendants did not have evidence to substantiate any of these claims at the time they were made. Further, based on the experience of some consumers who purchased WordSmart goods or services, Defendants' claims about their refund policies were false.

**Consumers Had to Fight Defendants to Obtain Refunds**

42.     Defendants' stated refund policy is "100% Money Back 30-Day Guarantee: …[G]o ahead and try WordSmart for 30 days. If for any reason you are unsatisfied with the product, simply return it for a full refund of the purchase price.

1    It's that easy." This guarantee has appeared repeatedly on the WordSmart website,

2    as well as in the infomercial and in Defendants' telemarketing calls to consumers.

3        43.    Yet consumers were not guaranteed a full refund for any reason.

4    When consumers have requested a refund within 30 days, Defendants have often

5    told them that they must complete additional tasks. For example, Defendants have

6    required that consumers use specific portions of the software and complete a

7    specified number of training modules, or answer a series of questions about the

8    product. In some cases, Defendants have refused to provide a refund within the 30-

9    day trial period even when the consumer complied with these additional,

10   previously undisclosed, hurdles.

11       44.    Consumers who made multiple refund requests and complied with

12   Defendants' additional conditions often did not receive refunds unless they also

13   complained to law enforcement, their credit card companies, or the Better Business

14   Bureau.

15                  **<u>VIOLATIONS OF THE FTC ACT</u>**

16       45.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or

17   deceptive acts or practices in or affecting commerce."

18       46.    Misrepresentations or deceptive omissions of material fact constitute

19   deceptive acts or practices prohibited by Section 5(a) of the FTC Act. 15 U.S.C. §

20   45(a).

21

## <u>COUNT ONE</u>

**Misrepresentations in Violation of Section 5(a) (15 U.S.C. § 45(a))**

47.     In numerous instances, in connection with the manufacturing, advertising, marketing, promotion, offering for sale, sale, or distribution of WordSmart goods and services, Defendants have represented, directly or indirectly, expressly or by implication, that:

>    A.    Consumers' children expressed an interest in WordSmart goods or services;

>    B.    WordSmart is affiliated with the administrators of a standardized test or a consumer's local school;

>    C.    Consumers who use WordSmart will learn 10 to 100 times faster;

>    D.    Students who use WordSmart will score higher in every class and on every test;

>    E.    WordSmart's 5 modes of learning teach consumers how to learn a word after just 1-5 times, instead of having to view that same word up to 50 times;

>    F.    WordSmart's award-winning speed reading program will improve reading speed up to 10 times, while improving comprehension;

G.    After just 20 hours with the WordSmart program, students will have internalized so much knowledge of the English language that they will be able to identify the meaning of any word they come across on college preparation tests and beyond;

H.    WordSmart will improve: letter grades by at least 1 GPA point; SAT scores by at least 200 points; ACT scores by at least 4 points; GRE and GMAT scores by at least 100 points; and IQ scores. Consumers can achieve these benefits with only 20 minutes of study per day, twice a week, for a total of 20 hours; and

I.    WordSmart provides a 100% Money Back 30-Day Guarantee, which states that for 30 days following the purchase, consumers can return the goods or services for any reason and get a full refund of the purchase price.

48.    In truth and in fact, the representations set forth in Paragraph 47 are false or were not substantiated at the time the representations were made.

49.    Therefore, the making of the representations set forth in Paragraph 47 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

# VIOLATIONS OF THE TELEMARKETING SALES RULE

## COUNT TWO

### Misrepresentations of Material Aspects of Performance of Goods and Services in Violation of the TSR

50.     In numerous instances, in connection with the telemarketing of goods and services, Defendants have misrepresented, directly or by implication, material aspects of the performance, efficacy, nature, or central characteristics of such goods and services, including, but not limited to, that:

A.     Consumers' children expressed an interest in WordSmart goods or services;

B.     WordSmart is affiliated with the administrators of a standardized test or a consumer's local school;

C.     Consumers who use WordSmart will learn 10 to 100 times faster;

D.     Students who use WordSmart will score higher in every class and on every test;

E.     WordSmart's 5 modes of learning teach consumers how to learn a word after just 1-5 times, instead of having to view that same word up to 50 times;

F.     WordSmart's award-winning speed reading program will improve reading speed up to 10 times, while improving comprehension;

G.    After just 20 hours with the WordSmart program, students will have internalized so much knowledge of the English language that they will be able to identify the meaning of any word they come across on college preparation tests and beyond;

H.    WordSmart will improve: letter grades by at least 1 GPA point; SAT scores by at least 200 points; ACT scores by at least 4 points; GRE and GMAT scores by at least 100 points; and IQ scores. Consumers can achieve these benefits with only 20 minutes of study per day, twice a week, for a total of 20 hours; and

I.    WordSmart provides a 100% Money Back 30-Day Guarantee, which states that for 30 days following the purchase, consumers can return the goods or services for any reason and get a full refund of the purchase price.

51.    Defendants' acts and practices, as described in Paragraph 50 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(iii) and/or 16 C.F.R. § 310.3(a)(4).

## COUNT THREE

### Violating the National Do Not Call Registry

52.    In numerous instances, in connection with telemarketing, Defendants have initiated, or caused others to initiate, an outbound telephone call to a

consumer's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

## COUNT FOUR

### Ignoring Entity-Specific Do Not Call Requests

53.     In numerous instances, in connection with telemarketing, Defendants have initiated, or caused others to initiate, an outbound telephone call to a consumer who has previously stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

## COUNT FIVE

### Abandoning Calls

54.     In numerous instances, in connection with telemarketing, Defendants have abandoned, or caused others to abandon, an outbound telephone call by failing to connect the call to a sales representative within 2 seconds of the completed greeting of the consumer answering the call, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iv).

## CONSUMER INJURY

55.     Consumers in the United States have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are

1    likely to continue to injure consumers, reap unjust enrichment, and harm the public

2    interest.

3                    **THIS COURT'S POWER TO GRANT RELIEF**

4            56.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court

5    to grant injunctive and such other relief as the Court may deem appropriate to halt

6    and redress violations of any provision of law enforced by the FTC. The Court, in

7    the exercise of its equitable jurisdiction, may award ancillary relief, including

8    rescission or reformation of contracts, restitution, the refund of monies paid, and

9    the disgorgement of ill-gotten monies, to prevent and remedy any violation of any

10   provision of law enforced by the FTC.

11           57.    Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the

12   Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief

13   as the Court finds necessary to redress injury to consumers resulting from

14   Defendants' violations of the TSR, including the rescission or reformation of

15   contracts, and the refund of money.

16                         **PRAYER FOR RELIEF**

17           Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act,

18   15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C.

19   § 6105(b), and the Court's own equitable powers, requests that the Court:

20           A.    Enter judgment in favor of Plaintiff for each violation alleged in this

21                 Complaint;

22

1    B.    Enter a permanent injunction to prevent future violations of the FTC

2          Act and the TSR by Defendants;

3    C.    Award such relief as the Court finds necessary to redress injury to

4          consumers resulting from Defendants' violations of the FTC Act and

5          the TSR, including but not limited to, rescission or reformation of

6          contracts, restitution, the refund of monies paid, and the disgorgement

7          of ill-gotten monies; and

8    D.    Award Plaintiff the costs of bringing this action, as well as such other

9          and additional relief as the Court may determine to be just and proper.

10

11   Dated: October 3, 2014                    Respectfully submitted,
                                               Jonathan E. Nuechterlein
12                                             General Counsel

13

14                                             Danielle Estrada
                                               Tel: (202) 326-2630
15                                             E-mail: destrada@ftc.gov

16                                             Kathleen Daffan
                                               Tel: (202) 326-2727
17                                             E-mail: kdaffan@ftc.gov

18                                             Federal Trade Commission
                                               600 Pennsylvania Ave., NW
19                                             Mail Stop CC-8528
                                               Washington, DC 20580
20                                             Fax: (202) 326-3395

21                                             Attorneys for Plaintiff
                                               FEDERAL TRADE COMMISSION